IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BEVERLY OHNTRUP, et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | No. 76-742 |
| | : | |
| **MAKINA ve KIMYA ENDUSTRISI KURUMU, et al.** | : | |
| **Defendants.** | : | |
| | : | |

Goldberg, J.                                                                                           December 11, 2012

**MEMORANDUM OPINION**

Nearly three decades ago, Morgan, Lewis & Bockius LLP ("Morgan") filed a motion to withdraw as counsel for Defendant Makina ve Kimya Endustrisi Kurumu ("MKEK"). That motion was denied by the late Honorable Louis H. Pollak and the denial was affirmed by the United States Court of Appeals for the Third Circuit. Presently before the Court is Morgan's Renewed Motion for Leave to Withdraw as Counsel to MKEK. For the reasons set forth below, the motion will be granted.

**I.      Factual and Procedural Background**

In 1976, Plaintiffs initiated a products liability action against Turkish corporation MKEK after an MKEK handgun malfunctioned and fired a bullet through the hand of Robert Ohntrup, Plaintiff Beverly Ohntrup's late husband. Morgan was retained by and entered an appearance on behalf of MKEK. (Morgan's Br. 1; Pl.'s Br. 1-2.)

On July 9, 1984, following a bifurcated trial, judgment was entered in favor of Plaintiffs in

the amount of $847,173.97.[1] The Third Circuit affirmed the judgment on March 26, 1985. To date, MKEK has failed to satisfy any portion of the judgment and has not complied with Plaintiffs' discovery requests propounded in aid of execution. (Pl.'s Br. 2-3.)

Following the Third Circuit's ruling, MKEK advised Morgan that it was terminated as counsel.[2] Having received no further communications from MKEK, Morgan filed its first motion for leave to withdraw as counsel, which Judge Pollak denied on November 27, 1985. (Morgan's Br. 1-2.) The Third Circuit affirmed this denial "without prejudice to renewal of the motion at a later appropriate time." Ohntrup v. Firearms Ctr., Inc., 802 F.2d 676, 680 (3d Cir. 1986) (per curiam).

After this decision, Morgan continued to receive materials related to the case and forwarded them to MKEK. Morgan has no record of having received any response from MKEK, or any other communication from MKEK, since 1989. At no time since MKEK terminated Morgan as its counsel in 1985 has MKEK authorized Morgan to perform any additional work or to undertake any action pertaining to this lawsuit. As a result, Morgan has not made any filings or appeared before the Court on behalf of MKEK for more than twenty years. (Morgan's Br. 2-3; Green Aff. ¶¶ 4-7.)

In November 2011, after discovering that MKEK had entered into a contract to purchase ammunition components with non-party Alliant Techsystems, Inc., Plaintiffs renewed their attempts to execute on the judgments. Presently, Plaintiffs are still actively pursuing collection efforts. (Pl.'s Br. 6.)

---

[1] In 1998, this judgment was increased to $3,108,878.50 to include delay damages, Ohntrup v. Makina ve Kimya Endustrisi Kurumu, 2007 WL 1166064, at *1 (E.D. Pa. Apr. 16, 2007), and has since risen to over $6 million with the inclusion of post-judgment interest. Plaintiffs also hold a contempt judgment in the amount of $16,000,000, arising out of MKEK's refusal to abide by court orders and its efforts to evade execution by Plaintiffs. (Pl.'s Br. at 3.)

[2] MKEK confirmed this decision by telex on September 6, 1985. (Morgan's Br. Ex. A.)

On May 11, 2012, Morgan filed the instant motion. Plaintiffs filed their response in opposition on May 25, 2012. At the Court's direction, Plaintiffs and Morgan also submitted supplemental briefing on June 15, 2012. The matter is now ripe for disposition.

## II.  Discussion

Pursuant to Local Rule of Civil Procedure 5.1(c), an "attorney's appearance may not be withdrawn except by leave of court, unless another attorney of this court shall at the same time enter an appearance for the same party." E.D. Pa. Civ. R. 5.1(c) (formerly Rule 18(c)). The purposes of Rule 5.1(c) include "providing for communications between the litigants and the court, as well as ensuring effective court administration." Ohntrup, 802 F.2d at 679. In resolving a motion of counsel to withdraw, a court generally considers the reason for withdrawal, the potential prejudice to litigants, any harm withdrawal might cause to the administration of justice and the degree to which withdrawal will delay resolution of the case. Crestar Mortg. Corp. v. Peoples Mortg. Co., Inc., 1995 WL 695093, at *1 (E.D. Pa. Nov. 15, 1995) (citing Haines v. Liggett Grp., Inc., 814 F. Supp. 414, 423 (D.N.J. 1993)).

### A.  Meaningful Purpose

As the Third Circuit noted in Ohntrup v. Firearms Center, Inc., the rule of law does not automatically require an attorney to continue to represent a client until such time as the client arranges substitute counsel. 802 F.2d at 679-80.[3] Instead, "a law firm is entitled to withdraw once the firm demonstrates to the satisfaction of the district court that its appearance serves no meaningful

---

[3] Indeed, in considering the circumstances present at the time of Morgan's first motion to withdraw, the Third Circuit noted that imposing such a rule could potentially disallow Morgan from withdrawing at any time. See Ohntrup v. Firearms Ctr., Inc., 802 F.2d 676, 679-80 (3d Cir. 1986).

purpose, particularly insofar as an opposing interest is concerned." Id.  A court determines whether a firm's continued involvement in a case serves "no meaningful purpose," by weighing three factors: (1) the burden imposed on the potentially withdrawing counsel if the status quo is maintained; (2) the stage of the proceedings; and (3) the prejudice to all parties. Buschmeier v. G&G Invs., Inc., 222 Fed. Appx. 160, 163-64 (3d Cir. 2007).

In the present case, Morgan asserts that it should be permitted to withdraw as it no longer serves a meaningful purpose in this action.  Morgan points out that the continuous receipt of documents from Plaintiffs' counsel regarding collection efforts imposes a substantial burden upon the firm, in that receipt of such materials requires the time and attention of its attorneys and personnel to review and forward to MKEK.  Morgan also notes that since the litigation is in the post-judgment enforcement stage—rather than, for example, the trial stage—and because it has become apparent over the last twenty years that the firm is "entirely unable to facilitate any communication with MKEK," it cannot aid in the enforcement of Plaintiffs' judgments.  Finally, given the fact that MKEK refuses to communicate with Morgan, the firm urges that withdrawal will not prejudice Plaintiffs because Plaintiffs "are in as good a position to communicate with MKEK as is Morgan." (Morgan's Br. 4-5.)

Plaintiffs counter that the Buschmeier factors instead favor a denial of Morgan's motion. Plaintiffs first contend that the burden imposed on Morgan by remaining in the case—"print[ing] out papers and mail[ing] them off to Turkey"—is neither unduly burdensome nor time consuming for a large law firm.  Plaintiffs further argue that their execution efforts have not been exhausted and thus Morgan serves a vital purpose in aiding execution.  Specifically, Plaintiffs assert that Morgan remains an "indispensable intermediary" through which Plaintiffs and the Court can communicate

with MKEK, an intractable foreign party.  Plaintiffs also claim that Morgan's withdrawal will be prejudicial in that it will impose on them the burden of complying with the complex and costly procedures set forth in the Hague Convention, and make their chances of collecting on their judgments even more difficult.  (Pl.'s Br. 10-12.)

For several reasons, we find that the Buschmeier factors weigh in favor of granting Morgan's motion.  First, requiring Morgan to expend time and attention to review and forward materials from Plaintiffs to MKEK imposes a burden on the firm.  Plaintiffs' characterization of Morgan as a "large law firm" does not change the fact that so long as Morgan remains in this case, it, like any other firm—large or small—will be obligated to expend resources.

Further, the stage of this litigation also favors Morgan's withdrawal.  In affirming Judge Pollak's denial of Morgan's first motion to withdraw, the Third Circuit noted that Plaintiffs had just begun their collection efforts.  Thus, the Third Circuit found no error in Judge Pollak's finding that Morgan's withdrawal would leave the court without the possibility of effective communication with a Turkish defendant and without a reliable mechanism for responsible supervision of the post-judgment aspects of the litigation.  Ohntrup, 802 F.2d at 679.  Presently, over twenty-five years after Judge Pollak's ruling, MKEK's continued and longstanding practice of refusing to communicate with Morgan represents a significant change of circumstances.

Morgan's first motion to withdraw was filed only months after the Third Circuit affirmed the original judgment against MKEK at a time when there was hope that the firm would be able to alleviate the communication gap between the parties and provide counsel to MKEK regarding post-judgment matters.  Unfortunately, these objectives were never accomplished.  Despite the fact that nearly three decades have passed, the communication gap remains as Morgan has had no

communication with MKEK since 1989. Given the complete absence of communication, Morgan has also been unable to perform the function of post-judgment supervision. Because Morgan cannot communicate with MKEK, its appearance at this stage of the litigation lacks a meaningful purpose.

Lastly, while Plaintiffs stress that they will incur a substantial burden if Morgan is permitted to withdraw in that they will then be forced to serve MKEK directly and in compliance with the procedures of the Hague Convention, we do not find that this factor alone warrants denial of Morgan's motion. Morgan's obligations as counsel to an unresponsive, foreign corporate client cannot continue forever, and the weight of the evidence demonstrates that the firm no longer serves a meaningful purpose in this action.

### B.    Law of the Case Doctrine

Finding that the Buschmeier factors favor withdrawal, we next consider Plaintiffs' contention that Morgan's renewed motion should be denied under the law of the case doctrine. This doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). The doctrine exists "to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." In re Pharmacy Benefit Managers Antitrust Litig., 582 F.3d 432, 439 (3d Cir. 2009) (citing Casey v. Planned Parenthood of Se. Pa., 14 F.3d 848, 856 (3d Cir. 1994)). This doctrine does not, however, preclude a court from revisiting its own decision or one of a coordinate court where new evidence is available or a supervening new law has been announced. Id. at 439.

Plaintiffs assert that the law of this case is that Morgan must remain as counsel for MKEK until the judgments have been satisfied or Plaintiffs abandon collection efforts. They argue that,

despite the fact that decades have passed, nothing has changed factually or legally since the Third Circuit decided <u>Ohntrup</u>. In particular, Plaintiffs contend that the key condition imposed in that case—that Morgan must demonstrate that its appearance serves no meaningful purpose—has not been satisfied. Accordingly, they claim that the law of the case doctrine dictates that the court must again deny Morgan's leave to withdraw. (Pl.'s Br. 6, 8-10.) We disagree.

Plaintiffs mistake the rule articulated in <u>Ohntrup</u>. There, the Third Circuit concluded that a law firm may withdraw once it demonstrates that its appearance "serves no meaningful purpose." The court then expressly provided that Morgan could renew its motion "at a later appropriate time <u>even if no substitute counsel replaces [it.]</u>" To the contrary, the law of the case as framed by Plaintiffs narrowly focuses on dicta within a footnote of the opinion, where the court indicated that it "anticipate[d]" that Morgan would remain in the case until Plaintiffs exhausted meaningful efforts to satisfy their judgment. That sentence is not the rule of the case. Nor does the court's "anticipation" of how the case would proceed preclude us from reviewing the facts as they are today.[4]

While the procedural posture of the case has not changed in that Plaintiffs are still attempting to execute on their judgment, the passing of nearly three decades cannot be ignored. Indeed, in applying the present factual circumstances to the rule established in <u>Ohntrup</u>, we concluded in Part II.A, <u>supra</u>, that Morgan's appearance presently serves no meaningful purpose in the litigation. Thus, Plaintiffs' argument fails.

---

[4] While it is true that Plaintiffs' collection efforts remain ongoing, we also note that we do not believe the Third Circuit contemplated that the post-judgment phase of this litigation would last nearly three decades.

### C. Prohibition on Corporate Self-Representation

Lastly, we must evaluate whether allowing Morgan to withdraw would violate the prohibition on corporate self-representation. It is well-settled that a "corporation may appear in the federal courts only through licensed counsel." Rowland v. Cal. Men's Colony, 506 U.S. 194, 202 (1993). Despite this mandate, the Third Circuit has made clear that "in certain circumstances, counsel for a corporation should be permitted to withdraw even before a corporation finds a suitable substitute." Buschmeier v. G&G Invs., Inc., 222 Fed. Appx. 160, 163 (3d Cir. 2007) (citing Ohntrup, 802 F.2d at 680). For instance, the court has noted that its precedent instructs "that a law firm can withdraw from representing a corporation even before the corporation retains new counsel when the withdrawing firm 'serves no meaningful purpose.'" Id. (citing Ohntrup, 802 F.2d 680). Moreover, it is the burden of the corporation, not its current counsel, to find new representation. See id. (noting that courts may, in some instances, permit withdrawal and inform the corporation that it may not continue without retaining new counsel).

As Morgan has demonstrated that its representation serves no meaningful purpose, granting leave to withdraw would not violate the prohibition against corporate self-representation.

### III. Conclusion

For the reasons set forth above, Morgan's Renewed Motion for Leave to Withdraw as Counsel to MKEK will be granted. In reaching this decision, we emphasize that we do not condone the contemptuous conduct of MKEK. However, denying Morgan's motion to withdraw would punish Morgan and not MKEK. While we are sympathetic to Plaintiffs' plight, the fact is they have not been able to collect their judgment over the past twenty-seven years. Morgan has not received any communication from MKEK since 1989 and it is unclear how Morgan can help Plaintiffs

execute on their judgments. Therefore, we will not require Morgan to continue its superficial appearance in this litigation.

      An appropriate Order follows.